IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

CRIMINAL NO. 21-296 (GAG/MDM)

v.

**[1] REINALDO RODRIGUEZ-DE JESUS,**
**[2] RAUL ALEJANDRO CORTEZ-BENITEZ**

Defendants.

## UNITED STATES OF AMERICA'S MOTION FOR INQUIRY INTO SOURCE OF ATTORNEY FEES

**TO THE HONORABLE COURT:**

**COMES NOW** the United States of America through the undersigned attorneys, and very respectfully states, alleges and prays:

**I.     INTRODUCTION**

Pursuant to *Wood v. Georgia*, 450 U.S. 261, 269 (1981), and *Quintero v. United States*, 33 F.3d 1133 (9th Cir. 1994), the United States hereby moves this Honorable Court to conduct a hearing to determine:

1. Whether defense counsel for both co-defendants [1] Reinaldo Rodriguez-De Jesus and [2] Raul Alejandro Cortez-Benitez has been paid or will be paid by someone other than these defendants;

2. If so: whether defense counsel has a potential conflict of interest;

3. Whether the defendants waive any such conflict of interest; and

    4.   Whether this Court should accept such waiver.

**II.    BACKGROUND**

On August 25, 2021, both co-defendants were indicted in the above captioned case and charged with four counts of federal drug-trafficking charges stemming from an incident where [1] Rodriguez-De Jesus and [2] Cortez-Benitez were on a boat that contained approximately 375 kilograms of cocaine in a hidden compartment. (ECF No. 3).

Co-defendant [1] Rodriguez-De Jesus was arrested two days later, on August 27, 2021, and was brought forth for an initial appearance that same day. (ECF No. 7). Counsel Edgar Sanchez appeared at the initial appearance on behalf of co-defendant [1] Rodriguez-De Jesus. (*Id.*). Co-defendant [2] Cortez-Benitez was arrested a few weeks later, on September 7, 2021 and was also brought forth for an initial appearance on the same day as his arrest. (ECF No. 14). Again, Counsel Edgar Sanchez appeared at the initial appearance on behalf of co-defendant [2] Cortez-Benitez. (*Id.*). While a pretrial services report was not prepared for co-defendant [1] Rodriguez-De Jesus, the pretrial services report for co-defendant [2] Cortez-Benitez indicated that he was unemployed since January 2021, had no monthly income, had no present assets, and his family helped him pay for basic needs and lodging. (ECF No. 17 at 1-2).

**III.    ANALYSIS**

    A.  <u>The Need for a Third-Party Payment Inquiry</u>

In *Wood v. Georgia*, the Supreme Court noted "the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise." 450 U.S. 261, 268-69 (1981). As both stated by the Court in *Wood* and the First Circuit, a conflict arises if a lawyer is being paid by the

head of a criminal enterprise "because a lawyer could be inclined to 'prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest.'" *United States v. Laureano-Perez*, 797 F.3d 45,56 (1st Cir. 2015) (quoting *Wood,* 450 U.S. at 269). Accordingly, the Supreme Court has held that the trial court has a "duty to inquire further" anytime that "the *possibility* of a conflict of interest" is sufficiently apparent. *Wood,* 450 U.S. at 272. (emphasis in original).

In *Quintero v. United States*, 33 F.3d 1133 (9th Cir. 1994), the Ninth Circuit emphatically reiterated the need for the trial court to inquire into the possibility of a conflict of interest when there is reason to believe that privately retained defense counsel's fees are being paid by a third party:

> This opinion is being published to *alert* trial judges, particularly in drug cases, to determine whether or not third parties are paying the fees of retained counsel when the defendant is indigent and, if so, whether the defendant understands the potential conflict of interest that may exist in such an arrangement and voluntarily waives that conflict.

*Id.* at 1134. (emphasis added).

This Court has also recognized the importance of conducting an inquiry into potential third-party fee payments. *See, e.g., United States v. Mulero Vargas*, 2018 WL 6990659 (J. Morgan) (D.P.R. Nov. 30, 2018) ("Both *Wood* and *Quintero* advise trial courts to conduct an inquiry into a potential conflict of interest regarding the defendant's representation when there is reason to believe that the fees are being paid by an unknown third party. The court must determine whether a conflict arises as a result of such third-party fee arrangement."), *report and recommendation adopted* (J. Besosa) (D.P.R. 2019). Other courts have also recognized the potential conflict of

3

interest created when someone other than the defendant pays the fees of defense counsel. *See, e.g.*, *United States v. Locascio*, 6 F.3d 924, 932 (2d Cir. 1993) ("Ethical considerations warn against an attorney accepting fees from someone other than her client. As we stated in a different context, the acceptance of such 'benefactor payments' 'may subject an attorney to undesirable outside influence and raises an ethical question as to whether the attorney's loyalties are with the client or the payor.'" (quoting *In re: Grand Jury Proceedings*, 42 F.3d 876, 880 (4th Cir. 1994)).

It is important that *Wood-Quintero* issues be aired and resolved as early as possible. Unless a *Wood-Quintero* inquiry is conducted here, any conviction would potentially be open to collateral attack. For example, in *Quintero*, privately retained defense counsel replaced court-appointed defense counsel. 33 F.3d at 1135. The defendant was convicted at trial. *Id.* The defendant then filed a § 2255 petition claiming that his privately retained defense counsel suffered from "a conflict of interest because [his defense] attorney was paid by an unknown third party." *Id.* The Court of Appeals, reversing the trial court, held that an evidentiary hearing on the conflict of interest claim must be held and remarked that "if the third party paying for Quintero's attorney was involved in the narcotics transaction," this conflict of interest could have affected counsel's performance in regards to plea agreement negotiations. *Id.* at 1137. *Cf. United States v. Munoz*, 23 F. App'x 13, 15 (1st Cir. 2001) (vacating the defendant's conviction because the defendants asserted that there was a potential conflict of interest provided by joint representation and the district court did not hold a hearing).

Similarly, in *Struminikovski v. United States*, 926 F. Supp. 113 (N.D. Ill. 1996), the defendant was convicted at trial and his conviction was affirmed on direct appeal. *Id.* at 114. The defendant then filed a § 2255 petition claiming that his defense counsel was paid by "an unindicted

4

co-conspirator, and that [defense counsel's] loyalty to [the unindicted co-conspirator] precluded a fair defense." *Id. at* 115. The court then ordered that an inquiry be conducted on this claim. *Id.* at 115-17.

Similarly, any guilty plea would also be potentially subject to collateral attack. *See Garfias v. United States*, 894 F. Supp. 37 (D.Mass. 1995). In *Garfias*, the defendant pleaded guilty to conspiring to distribute cocaine. After sentencing, the defendant filed a § 2255 petition claiming that: (a) "upon the 'urging' of his attorney, he accepted a plea agreement which was contingent upon [all defendants pleading guilty]; (b) his attorneys' fees were paid for by a more culpable co-defendant; and (c) the co-defendant stood to benefit greatly from the plea agreement." *Id.* at 42. Based on the § 2255 petition, the court appointed new counsel to represent the defendant and ordered that an evidentiary hearing be held to determine whether the defendant's plea should, as requested by the defendant, be vacated. *Id.*

The Court's inquiry as to the source of the attorney's fees will not infringe on the attorney-client privilege, as courts have consistently held that this information is not protected by the attorney-client privilege. *United States v. Strahl*, 590 F.2d 10, 11 (1st Cir. 1978); *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1488 (10th Cir. 1990) (collecting cases).

In *Quintero*, the Ninth Circuit urged trial courts to conduct a threshold conflict of interest inquiry when: (1) there is evidence that the defendant is indigent; and (2) the defendant is represented by retained counsel. That circumstance is present here. Specifically, co-defendant [2] Cortez-Benitez indicated that he was unemployed since January 2021, had no monthly income, had no present financial assets, and needed his family to help him pay for basic needs and lodging.

(ECF No. 17 at 1-2). Moreover, it was unusual how counsel Sanchez had already been retained prior to both co-defendants' initial appearances, which does not happen often.

In addition, the United States's ex-parte filing provides additional circumstances indicating the likelihood of the existence of a third-party payment of the defendants' attorney's fees. (ECF Nos. 24, 24-1, 24-2). Given the inherent security concerns presented if the information contained in that filing is provided to the parties involved, the United States requests that this information not be disclosed. However, given that the information is on the record, this Court can take this information into account in conducting the inquiry requested by the United States and the appropriate course of action after the inquiry is held, as this Court has previously done. *See* Criminal Case No. 14-183, ECF Nos. 52 and 102. In Criminal Case No. 14-183, this Court's Magistrate Judge McGiverin issued an Order disqualifying retained defense counsel in part because "[t]he government's ex parte filing [] informed the court of a potential conflict arising out of a third-party fee arrangement." Criminal Case No. 14-183, ECF No. 52, at 3. After defense counsel appealed, District Court Judge Francisco Besosa affirmed the Magistrate Judge's determination and again relied in part on "ex parte submissions from the government and defense counsel" to conclude that "a knowing and voluntary waiver [could not] be made given the circumstances of this case." Criminal Case No. 14-183, ECF No. 102, at 5.

The need to conduct a third-party payment inquiry is especially significant in a case involving a large-scale drug-trafficking conspiracy, such as the instant case. "A drug conspiracy case involving large quantities of cocaine, fees paid by unknown third parties, and the potential for unindicted co-conspirators may be sufficient to demonstrate active representation of conflicting interests." *Quintero*, 33 F.3d at 1135. This is the case because of the potential that high-ranking

6

members of a drug-trafficking organization may pay for an attorney for a lower-ranking co-conspirator to prevent them from cooperating with the government, to the detriment of the lower-ranking member. *See United States v. Stuckey*, 917 F.2d 1537 (11th Cir. 1990). In *Stuckey*, the appellant and a co-conspirator were arrested for transporting cocaine across state lines. *Id.* at 1543. The Court remarked that it was "obvious" that "those running the [drug-trafficking] syndicate hired [the defendant's] attorneys" in an effort to "prevent them from cooperating with the Government and revealing the identities of those in the syndicate who gave them their marching orders." *Id*. at 1543. As the Court stated, "[s]uch control can be devastating to the rights of the accused; rather than getting credit through a charge bargain with the prosecutor or a reduced sentence from the trial judge, the accused stands mute and takes all the blame." *Id*.

If, after such inquiry, the Court determines that a third party is paying the fees of retained counsel Edgar Sanchez, the Court should complete the *Wood-Quintero* inquiry by determining whether the defendant: (1) understands the potential conflict of interest that may exist in such an arrangement; and (2) voluntarily waives that conflict. *See Wood*, 450 U.S. at 273-74; *Quintero*, 33 F.3d at 1134. This Court would then determine whether to accept the waiver. *See Wheat v. United States*, 486 U.S. 153 (1988).

"[A] district court may disqualify a defendant's counsel of choice in spite of an express waiver by that defendant of any conflict of interest." *United States v. Urutyan*, 564 F.3d 679, 686 (4th Cir. 2009). Circuit courts have upheld a trial court's disqualification of an attorney when there is an indication that the attorney's fees are being paid by someone who benefits from the client's silence. *See United States v. Laureano-Perez*, 797 F.3d 45, 55–57 (1st Cir. 2015) (affirming the district court's disqualification of an attorney despite the defendant's attempted waiver where

counsel was likely being paid by the leader of the drug organization and the government stated that any plea offer would require cooperation); *Urutyan*, 564 F.3d at 686–88 (affirming the district court's disqualification of an attorney despite the defendant's attempted waiver where there was a sufficient basis to conclude that the defendant's counsel was being paid by a member of the alleged criminal conspiracy).

B. The Relationship of this Motion with the Upcoming Foster Hearing

Since counsel Edgar Sanchez has entered an appearance on behalf of both-codefendants in this case, the Court is set to conduct a Foster hearing this upcoming Friday October 8, 2021 due to the inherent potential conflicts of interest provided by joint representation. *See United States v. Foster*, 469 F.2d 1, 4-5 (1st Cir. 1972); Fed. R. Crim. P. 44(c). The potential third-party attorney's fees payment in this case is also relevant to the Foster hearing inquiry. For example, the identity of the payer of the defendants' attorney fees is relevant to determining whether the defendants feel at liberty to answer the Court's colloquy at a Foster hearing truthfully and in evaluating the risk that the presence of a joint attorney may prevent the defendants from cooperating with the government. Thus, the government submits to the Court that the instant motion should be referred to Magistrate Judge Marshall Morgan since he is already set to conduct the Foster hearing inquiry in this case.

Once both motions are before Magistrate Judge Morgan, the government submits that the issue of potential third-party payment should be dealt with first. This is because conducting the third-party payment inquiry first could make the Foster hearing unnecessary while it is unlikely that conducting the Foster hearing first will make the third-party payment inquiry unnecessary.

8

To illustrate this, there are three possible results to the third-party payment inquiry: a) Counsel Sanchez remains as counsel for both defendants; b) Counsel Sanchez could discontinue from representing one, but not both of the co-defendants; or c) Counsel Sanchez could discontinue from representing both of the defendants. Under either scenario b) or c) above, there is then no need for a Foster hearing. In turn, if this Court inquires as to the issues presented by joint representation by conducting a Foster hearing first, even if Counsel Sanchez is only allowed to continue with the representation of one co-defendant, but not both, there would still be a need to conduct a third-party payment inquiry as to the co-defendant still represented by Counsel Sanchez. Therefore, in the interest of judicial efficiency, the government submits that the issue of potential third-party payment presented by this motion should be dealt with before the Foster inquiry.

**WHEREFORE**, it is hereby requested that this Honorable Court grant the aforementioned request and hold a hearing pursuant to *Wood v. Georgia*, 450 U.S. 261, 269 (1981), and *Quintero v. United States*, 33 F.3d 1133 (9th Cir. 1994). The government also requests that the requested hearing and instant motion be referred to Magistrate Judge Marshall Morgan since he is already set to conduct a Foster hearing in this case and the hearing and disposition on this motion could inform the Court's inquiry as to the Foster hearing or make it unnecessary.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 6th day of October, 2021.

W. STEPHEN MULDROW
UNITED STATES ATTORNEY

/s/ *Antonio L. Perez-Alonso*
Antonio L. Perez-Alonso – G02902
Assistant United States Attorney
United States Attorney's Office

Torre Chardón, Suite 1201
350 Carlos Chardón Ave.
San Juan, Puerto Rico 00918
Tel. (787) 766-5656

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing document was uploaded today, October 6, 2021, into the Court's website using the CM/ECF system, and a true and correct copy will be served upon counsel of record through this system.

/s/ *Antonio L. Perez-Alonso*
Antonio L. Perez-Alonso – G02902
Assistant United States Attorney